# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

FILED
MAY 15 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple Cellular Phone, Model Number: A1864<br>IMEI: 356712081591273 | )<br>)<br>) Case No. **19MJ2014**<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the  **Southern**  District of  **California** , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 & 960, 963 | Possession with intent to Distribute a Controlled Substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Patrick Buchanan, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/15/19

*Judge's signature*

City and state: San Diego, California   Hon. Michael S. Berg  United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Apple Cellular Phone<br>Model Number: A1864<br>IMEI: 356712081591273 | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |

I, Patrick Buchanan, a Special Agent with the United States Department of Homeland Security - Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device:

> Apple Cellular Phone
> Model Number: A1864
> IMEI: 356712081591273

(**Target Device**), as described in Attachment A.

2. The **Target Device** was seized on October 10th, 2018, from Jonathan PEREZ MARTINEZ's possession at the time he was arrested at the Otay Mesa California Port of Entry, for the importation of approximately 5.56 kilograms (12.25 pounds) of cocaine and approximately 4.40 kilograms (9.70 pounds) of heroin in violation of Title 21, United States Code, Sections 952, 960. At the time of his arrest, PEREZ MARTINEZ was the driver of a black 2007 Ford Edge bearing California license plate 8FOY673. The **Target Device** is currently in the possession of the Department Homeland Security (DHS), Homeland Security Investigations (HSI) evidence vault, located at 880 Front St Suite 3200 San Diego, CA 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

## BACKGROUND AND EXPERIENCE

4. I am a Special Agent for the Department of Homeland Security - Homeland Security Investigations (HSI). I have been employed by HSI since October 2016. My formal training has consisted of the Criminal Investigator Training Program and Homeland Security Investigations Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, Georgia, which included training related to narcotics and dangerous drugs. I have conducted multiple criminal investigations into violations of federal and state law including, but not limited to, contraband smuggling, narcotics trafficking, and organized criminal activity. Currently, I am assigned to a contraband smuggling investigative group.

5. Prior to my employment with HSI, I was employed by Prince William County, VA Police Department (PWCPD) for over 9 years. I held the position of Police Officer and Detective with PWCPD. During my tenure at PWCPD, I received formal training from the Prince William County Criminal Justice Academy, Fairfax County Criminal Justice Academy, Northern Virginia Criminal Justice Academy, New England High Intensity Drug Trafficking Area (HIDTA) Headquarters, Washington / Baltimore High Intensity Drug Trafficking Area (HIDTA) and Drug Enforcement Administration Academy. This training included but was not limited to: undercover operations involving narcotics, illegal drug trends, methods of drug distribution, drug concealment and the application / execution of search warrants. As a Detective, I had numerous seizures of narcotics and currency from drug trafficking organizations. Additionally, I have purchased and sold a variety of illegal drugs and other illicit goods while operating in an official undercover capacity. These sales and purchases were arranged by me or confidential informants using a cellular phone, mobile messaging applications, websites and in person introductions. These investigations led to the successful criminal prosecution of offenses at the local, state and federal level.

6. Based upon my training and experience as a law enforcement officer, I am familiar with the ways in which drug smugglers and traffickers conduct their business. During the course of my duties, I have (a) worked as a case agent, directing specific drug-related investigations; (b) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (c) participated in the execution of search warrants related to drug investigations; (d) initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute; and (e) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers, traffickers and those associated with the drug subculture.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the phone numbers of calls placed to and from cellular telephones.

8. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a.    Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b.    Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c.    Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d.    Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

    f.    The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

9. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This

4

statement is made in support of an application for a warrant to search a cellular telephone that is believed to contain evidence of violations of 21 U.S.C. §§ 952, 960, 963.

11. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## FACTS SUPPORTING PROBABLE CAUSE

12. On October 10th, 2018, at approximately 10:51 a.m., Jonathan PEREZ MARTINEZ, a United States citizen, attempted to enter the United States from the Republic of Mexico via the Otay Mesa California Port of Entry. PEREZ MARTINEZ was the driver of a black 2007 Ford Edge bearing California registration 8FOY673 (Subject Vehicle).

13. In the primary inspection area, PEREZ MARTINEZ was encountered by Customs Border Protection Officer (CBPO) Esmeralda Michel. PEREZ MARTINEZ presented a United States Passport card and gave a negative customs declaration. CBPO Michel queried PEREZ MARTINEZ's information and received a computer-generated alert to refer him to the secondary inspection lot.

14. At the secondary inspection lot, CBPO Garth Cory was screening vehicles with the Z-Portal X-ray system. CBPO Cory screened the Subject Vehicle and noticed anomalies within the rear passenger quarter panel area. CBPO Cory notified the area supervisor of the findings.

15. CBPO Wayne Thibeault conducted a seven-point inspection of the Subject Vehicle. The inspection revealed several packages located in the rear quarter panel of the Subject Vehicle. The packages were observed between the outer wall and inner panels of the Subject Vehicle. CBPO Thibeault removed PEREZ MARTINEZ from the Subject

5

Vehicle, place him into handcuffs and escorted him to the security office. The Subject Vehicle was turned over to CBPO T. Pharakonekham for further processing.

16. CBPO Pharakonekham continued searching the Subject Vehicle after reviewing the Z-portal x-ray images of the Subject Vehicle. CBPO Pharakonekham removed a total of 12 packages concealed within the rear passenger quarter panel of the Subject Vehicle. CBPO Pharakonekham opened each of the packages and found 5 to contain a white powdery substance and the remaining 7 contained a brown powdery substance.

17. CBPO Pharakonekham conducted a field test on random packages that contained the white powder. The field test returned a positive result for characteristics of cocaine. The total approximate weight for the packages containing the white powder is 5.56 kilograms. CBPO Pharakonekham then conducted a field test on random packages that contained the brown powder. The field returned a positive result for the characteristics of heroin. The approximate weight for the packages containing the brown powder is 4.40 kilograms.

18. During his post-*Miranda* interview with HSI SA Patrick Buchanan and SA Regino Enriquez, PEREZ MARTINEZ denied knowledge of the narcotics located in the subject vehicle. PEREZ MARTINEZ insisted that he entered the United States to run errands on behalf of his boss. SA Buchanan showed PEREZ MARTINEZ the **Target Device** and asked if it was his. PEREZ MARTINEZ positively identified the **Target Device** as his own by shaking his head in an up and down fashion. PEREZ MARTINEZ then provided the passcode for the phone when asked. SA Buchanan then conducted a border search of the **Target Device** in the interview room while SA Enriquez continued the interview of PEREZ MARTINEZ.[1]

---

[1] Nothing obtained in the first search is being relied on in seeking this warrant. This information is provided for purposes of full disclosure, but I ask the Court not to consider this information in making its probable cause determination whether to authorize the requested search and seizure warrant.

6

Following the search and interview, the phone was packaged and submitted to the custody of Fines, Penalties and Forfeiture for holding.

19. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Device** contains evidence of violations of 21 U.S.C. §§ 952, 960, and 963 including communications, records, or data, including but not limited to emails, text messages, other social messaging applications (such as Whatsapp or Facebook) photographs, audio files, videos, or location data:

   a. tending to indicate efforts to import methamphetamine, cocaine or some other federally controlled substance from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

20. Based upon my experience and investigation in this case, I believe that PEREZ MARTINEZ is involved in narcotics smuggling activities. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of

PEREZ MARTINEZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of **Target Device.**

21.   Finally, drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. A law enforcement database check revealed PEREZ MARTINEZ was associated with the Subject Vehicle approximately eight (8) occasions beginning on September 6th, 2018 up to and including October 10th, 2018. Based on my training and experience, individuals such as PEREZ MARTINEZ will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given those facts, I respectfully request permission to search the **Target Device** for data beginning on August 1st, 2018 up to and including October 10th, 2018.

## METHODOLOGY

22.   It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard

drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

///
///
///
///
///

# CONCLUSION

25. Based on all of the facts and circumstances described above, there is probable cause to conclude that PEREZ MARTINEZ used the **Target Device** to facilitate violations of Title 21, United States Code, Sections 952 and 960.

26. Because the **Target Device** was promptly seized during the investigation of PEREZ MARTINEZ's trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by PEREZ MARTINEZ continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from August 1st, 2018 up to and including October 10th, 2018.

27. THEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Patrick Buchanan
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 15th day of May, 2019.

Honorable Michael S. Berg
United States Magistrate Judge

10

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    Apple Cellular Phone
    Model Number: A1864
    IMEI: 356712081591273
    **(Target Device)**

**Target Device** is currently in the possession of Department Homeland Security (DHS), Homeland Security Investigations (HSI) evidence vault, located at 880 Front Street Suite 3200 San Diego, CA 92154

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 1st 2018, up to and including October 10th, 2018:

a. tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963 Importation of a Controlled Substance & Conspiracy.